1
2
3
4
5
6
7
8
9
10
11
12
13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JENNIFER H.

                    Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

CASE NO. C20-6249-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

14    Plaintiff appeals a final decision of the Commissioner of the Social Security Administration

15 (Commissioner) denying Plaintiff's application for Supplemental Security Income (SSI) after a

16 hearing before an administrative law judge (ALJ). Having considered the ALJ's decision, the

17 administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

18                        **FACTS AND PROCEDURAL HISTORY**

19    Plaintiff was born on XXXX, 1981.[1] Plaintiff has limited education and previously worked

20 as a cashier and material handler. AR 29–30. Plaintiff filed an application for SSI on February 7,

21 2018, alleging disability beginning January 1, 2015. AR 17. The application was denied at the

22 initial level and on reconsideration. On April 21, 2020, the ALJ held a telephone hearing and took

23

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

testimony from Plaintiff and a vocational expert (VE). AR 110–52. On May 6, 2020, the ALJ issued a decision finding Plaintiff not disabled. AR 17–32. Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on October 22, 2020 (AR 2–8), making the ALJ's decision the final decision of the Commissioner. Plaintiff appeals this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings are supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (2000).

At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 19.

At step two, the ALJ must determine whether a claimant suffers from a severe impairment. The ALJ found Plaintiff has the following severe impairments: Factor V Leiden (FVL); chronic

venous insufficiency; history of deep vein thrombosis; history of renal cell carcinoma; obesity status-post left nephrectomy; headaches; and vision loss. AR 19. The ALJ also found that the record contained evidence of the following conditions that did not rise to the level of severe impairment: surgical excision of a right lower extremity lipoma; cervical degenerative disc disease; prior knee injury; and anxiety and depression. AR 19–20.

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. AR 21–23.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform light work, as defined in 20 C.F.R. § 416.967(b), with the following limitations:

> that does not require more than occasional pushing or pulling; that does not require climbing of ladders, ropes or scaffolds; that does not require more than frequent climbing of ramps or stairs; that does not require exposure to hazards; and that, as of October 9, 2018, does not require left peripheral vision or more than occasional depth perception.

AR 23. With that assessment, the ALJ found Plaintiff unable to perform any past relevant work. AR 29.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing other jobs, such as work as a cleaner, collator operator, and photocopy machine operator. AR 30–31.

Plaintiff raises the following issues on appeal: (1) Whether the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony about her symptoms and limitations; and (2) whether the ALJ provided specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician, Dr. Stacey Rittmueller, D.O. Plaintiff requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## 1. Subjective Testimony

Plaintiff contends that the ALJ improperly evaluated Plaintiff's testimony. The rejection of a claimant's subjective symptom testimony[2] requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence, but not when it merely lacks support in the medical evidence. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[L]ack of medical evidence cannot form the sole basis for discounting pain testimony.").

Plaintiff alleges that she is constantly in pain, can lift no more than 5 pounds, and cannot bend, reach, or squat without pain. AR 323, 327. She alleges that her impairments also affect her

---

[2] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 4

ability to stand, kneel, and climb stairs, and that she can walk about a half-mile before needing to stop and rest. AR 327. Plaintiff further alleges that she has back muscle spasms, loss of appetite, chronic back pain, and daytime fatigue. AR 309. Plaintiff testified at the hearing that she is unable to stand for long periods of time, that her legs and feet swell, that she experiences eye pain and migraines from lights and from looking at a screen for too long, that she sees floating circles and spots in her left eye, and that she cannot drive at nighttime. AR 121, 126–28. Plaintiff further testified that she needed to elevate her feet every two or two-and-a-half hours for 45 minutes to an hour at a time due to leg swelling. AR 127. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms to some degree," but that "the [i]nconsistencies undermine the weight that can be given to the claimant's symptom reports." AR 24.

     a. <u>Leg Swelling</u>

     Plaintiff argues that the ALJ erred by rejecting Plaintiff's testimony regarding her need to elevate her legs due to swelling. Dkt. 12, at 4. The ALJ found that the record shows that Plaintiff has chronic venous insufficiency and history of deep vein thrombosis in the context of Factor V Leiden, nine IVC stents, and extensive retroperitoneal venous collateral, but that Plaintiff's impairments "were treated in a generally conservative manner during the period at issue, such as with compression stockings, warfarin, lovenox, and similar treatment modalities." AR 24. The ALJ may discount a claimant's testimony regarding the severity of an impairment based on evidence of conservative treatment. *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007). Here, however, the record shows that Plaintiff has been receiving warfarin anticoagulation therapy since at least April 2018 through at least March 2020, which therapy required Plaintiff to test her blood several times a month. AR 1529–1608. Plaintiff reported to her treatment providers having

experienced loss of appetite, vomiting, and bruising during her warfarin treatment. AR 1539–1608. Plaintiff also underwent a series of Lovenox injections in April 2020 to treat blood clotting along with her warfarin treatment. AR 1607–08. Such treatment cannot reasonably be categorized as "conservative." *Compare Parra*, 481 F.3d at 751 (finding over-the-counter pain medication conservative treatment) *and Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding a recommendation to "avoid strenuous activities" conservative treatment) *with Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) (finding epidural steroid shots to the neck and lower back not conservative treatment). The ALJ's rejection of Plaintiff's symptom testimony regarding her leg swelling based on conservative treatment was not specific, clear, or convincing. However, because the ALJ gave other specific, clear, and convincing reasons for discounting Plaintiff's testimony as described below, this error was harmless. *See Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1227 (9th Cir. 2009) (harmless error if ALJ gave other valid independent reasons for discounting a Plaintiff's testimony).

The ALJ further found that Plaintiff's chronic venous insufficiency and history of deep vein thrombosis are not "shown by objective medical evidence to have caused greater limitations during the period at issue than those contained in the claimant's residual functional capacity." AR 24. An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle*, 533 F.3d at 1161. The ALJ found that Plaintiff denied any swelling or leg pain to a treatment provider on February 20, 2018, and that medical records in September and October 2018 found no edema of the extremities. AR 24–25. The ALJ also found that, besides the opinion of Dr. Rittmueller, the record "contain[ed] no noted recommendation that Plaintiff elevate her legs a couple of times a day for 12 or more consecutive months." AR 28–29. Therefore, the ALJ gave specific, clear, and convincing reasons for discounting Plaintiff's

testimony regarding debilitating leg swelling requiring leg elevation based on inconsistencies with the medical record, and the ALJ's findings are supported by substantial evidence.

      b.  <u>Back, Neck, Hip, and Knee Limitations</u>

Plaintiff argues that the ALJ erred by discounting Plaintiff's testimony regarding her standing, walking, lifting, and carrying limitations from her October 2018 motor vehicle accident. Dkt. 12, at 5–6. Plaintiff argues that evidence of Plaintiff being "treated with pain relief medication and physical therapy does not undermine her testimony that she was unable to stand or walk for prolonged periods of time, particularly since her problem was multi-factorial (degenerative disc disease and venous insufficiency compounded by obesity.)" *Id.* at 6. The ALJ found that, "[a]t the time of her discharge, the claimant was in no noted distress" and that Plaintiff's "pain was noted to be controlled." AR 25. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with treatment are not disabling for the purpose of determining disability benefits). Therefore, the ALJ did not err by discounting Plaintiff's symptom testimony based on evidence of treatment successfully relieving Plaintiff's pain from the October 2018 motor vehicle accident.

Plaintiff further argues that the ALJ erred by discounting Plaintiff's testimony based on inconsistencies in the record. The ALJ found that Plaintiff complained of 10/10 physical pain in June 2019 but "was found in the same exam to be in no distress and to have no acute musculoskeletal findings." AR 26. Plaintiff asserts that Plaintiff complained of a "flare of knee pain a few months after her motor vehicle accident," for which Plaintiff used hot and cold packs, Biofreeze, some pain medication, and exhibited tenderness on palpation. Dkt. 12, at 6. Plaintiff

further points to evidence evaluated by the ALJ and asserts that the records were related to other impairments and "[n]one of these treatment notes undermines [Plaintiff's] testimony that she cannot perform prolonged standing or walking." *Id.* at 7. Plaintiff offers an alternative interpretation of the medical evidence; however, the ALJ's interpretation is at least equally rational and not properly disturbed. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Therefore, Plaintiff has not shown that the ALJ erred by discounting Plaintiff's testimony regarding limitations from her back, neck, hip, and knee pain based on inconsistencies with the medical evidence.

Finally, Plaintiff argues that the ALJ erred by finding significant medical records noting Plaintiff to be in "no acute distress." Dkt. 12, at 7. Citing *Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017), Plaintiff argues that the notation "no acute distress" is not significant where an individual has a chronic condition. *Id.* Here, unlike in *Combs*, the ALJ did not rely on his own interpretation of the notation when assigning weight to competing medical opinions. Rather, the ALJ relied on evidence of Plaintiff's normal physical examination findings to find that the medical evidence undermined Plaintiff's symptom testimony. AR 27. Therefore, Plaintiff has not shown that the ALJ erred by discounting Plaintiff's symptom testimony based on inconsistencies with the medical evidence.

c.  Visual Limitations

Plaintiff argues that the ALJ erred by discounting Plaintiff's testimony regarding limitations from her vision loss stemming from the October 2018 accident. Dkt. 12, at 8–10. The ALJ cited treatment notes from Dr. Jay Haynie, O.D., and found that the notes show that Plaintiff's retinal edema from the accident "would resolve over time and that the claimant's visual symptoms should improve." AR 25. The ALJ further noted that subsequent treatment notes in November

2018 reported that Plaintiff's vision was improving and that, in March 2020, "the claimant's optical issues were noted to be stable and treatment was further deferred for six months." AR 26. Plaintiff asserts that Dr. Haynie's notation that Plaintiff's vision impairment was deemed "stable" in March 2020 shows that Plaintiff's eye trauma had not changed but not that it had resolved. Dkt. 12, at 9. Here, the ALJ did not find that Plaintiff's vision impairments from the October 2018 accident had resolved; rather, the ALJ noted medical evidence showed that her vision impairments had improved and that Dr. Haynie reported that they would improve over time. AR 25. Indeed, the ALJ did not clearly reject Plaintiff's testimony regarding vision loss from the October 2018 accident; rather, the ALJ adopted limitations in the RFC to address Plaintiff's vision loss from the accident by limiting Plaintiff to work that, "as of October 9, 2018, does not require left peripheral vision or more than occasional depth perception." AR 23, 27; *see Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). Therefore, Plaintiff has not shown that the ALJ erred in evaluating the medical evidence and Plaintiff's testimony regarding vision impairments from the October 2018 accident. Even if the ALJ had erred in evaluating Plaintiff's testimony, this error would be harmless because the RFC accounted for limitations from Plaintiff's vision loss from the October 2018 accident. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless if it is "inconsequential to the ultimate nondisability determination").

Plaintiff further argues that the ALJ erred by discounting Plaintiff's testimony regarding "eye strain that made it difficult to read or look at computer screens and caused migraines." Dkt. 12, at 9. The ALJ found that, although the record shows that Plaintiff "experienced reduced vision and optical changes, her visual loss measurements documented in the record generally reflect her uncorrected vision" and that the ALJ's decision was "made after considering the effects

of treatment, including corrective lenses." AR 25. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington*, 878 F.3d at 876. Plaintiff testified that taking migraine medication when she gets eye strain "helps out a lot," that she can see better and read with her glasses, and that, with her glasses on, she does not have difficulties with moving around. AR 129, 132–33. Therefore, Plaintiff has not shown that the ALJ erred by discounting Plaintiff's testimony regarding debilitating eye strain based on evidence of improvement with treatment.

Finally, Plaintiff argues that the ALJ erred by discounting Plaintiff's testimony regarding eye strain based on inconsistencies with Plaintiff's daily activity level. Dkt. 12, at 9. An ALJ may consider daily activities in evaluating a claimant's testimony regarding physical limitations. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling pain." (emphasis in original)). The ALJ found that Plaintiff's "vision limitations did not prevent the claimant from engaging in activities such as playing ball/catch with her children, reading, helping her children with homework, doing puzzles, cutting vegetables, and driving during the day," which activities the ALJ found "require varying degrees of visual acuity, accommodation, depth perception and other vision actions." AR 26 (citing hearing testimony). Plaintiff offers an alternative interpretation of the medical evidence and Plaintiff's activities; however, the ALJ's interpretation is at least equally rational and not properly disturbed. *Morgan*, 169 F.3d at 599. Even if the ALJ erred in discounting Plaintiff's testimony regarding debilitating vision loss based on evidence of Plaintiff's activities, this error is harmless because the ALJ gave

ORDER
PAGE - 10

1    other valid independent reasons for discounting this testimony as described above. *See Bray*, 554

2    F.3d at 1227.

3            d.   <u>Severe Headaches</u>

4            Plaintiff argues that the ALJ erred by discounting Plaintiff's testimony regarding her

5    frequent migraines after the motor vehicle accident. Dkt. 12, at 10. Plaintiff testified that twice a

6    week she has to lock herself in a room and lie down for hours due to the severity of her migraines.

7    *Id.* at 10; AR 133. The ALJ found that Plaintiff inconsistently mentioned interferences from her

8    headaches when discussing her daily activities. AR 26. At the hearing, Plaintiff described her

9    "every day" daily routine and mentioned needing to alternate between standing up, lying down,

10   and putting her feet up every few hours to let her blood flow but did not mention interference from

11   her headaches. AR 124. Plaintiff asserts that there is no inconsistency because Plaintiff's testimony

12   "evidently related to the days when she was able to get up." Dkt. 12, at 10. Plaintiff offers an

13   alternative interpretation of the medical evidence and Plaintiff's activities; however, the ALJ's

14   interpretation is at least equally rational and not properly disturbed. *Morgan*, 169 F.3d at 599.

15          Plaintiff further argues that the ALJ erred by finding that Plaintiff's testimony regarding

16   her debilitating migraines was inconsistent with Plaintiff's reports to medical providers that the

17   intensity of her migraines improved with medication and Plaintiff's lack of reports of continuing

18   difficulty after beginning medication. Dkt. 12, at 10. "[E]vidence of medical treatment successfully

19   relieving symptoms can undermine a claim of disability." *Wellington*, 878 F.3d at 876. Further, a

20   claimant's failure to report debilitating symptoms to her physicians undermines her later

21   statements to the agency. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Therefore,

22   Plaintiff has not shown that the ALJ erred by discounting Plaintiff's testimony regarding

23   debilitating migraines based on inconsistencies with the record.

1        e.   Daily Activities

2        Plaintiff argues that the ALJ erred by discounting Plaintiff's testimony regarding her

3    limitations based on inconsistencies with Plaintiff's level of activity. Dkt. 12, at 11–13. The ALJ

4    found that Plaintiff reported a level of activity that was inconsistent with Plaintiff's testimony,

5    citing evidence both before and after Plaintiff's October 2018 motor vehicle accident. AR 27. The

6    ALJ found, among other things, that Plaintiff reported being able to perform household work, play

7    games with her children, and fix meals for her children and assist them with homework, which

8    activities Plaintiff testified to performing "every day." AR 27, 124. The ALJ also found that

9    Plaintiff reported being able to care for herself, manage her finances, drive a car, and go on

10    vacation. AR 27. Evidence of the ability to engage in certain household activities may be

11    considered evidence of the ability to work. *See Morgan,* 169 F.3d at 600 (claimant's ability to fix

12    meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of

13    claimant's ability to work). Therefore, the ALJ did not err by finding Plaintiff's testimony

14    regarding debilitating limitations inconsistent with Plaintiff's daily activities.

15        Plaintiff argues that she testified that her daily activities were interrupted by needing to

16    elevate her legs and feet, citing 20 C.F.R. pt 404, subpt. P 12.00. Dkt. 12, at 12. The ALJ, however,

17    did not find at step three that Plaintiff's impairments meet or equal a listed impairment, AR 21–

18    23, and Plaintiff does not challenge this finding. Accordingly, the agency's evaluation criteria for

19    mental listings under 20 C.F.R. pt 404, subpt. P 12.00 are not applicable here. Even if these criteria

20    were applicable, the ALJ properly discounted Plaintiff's testimony regarding debilitating leg

21    swelling requiring leg elevation based on inconsistencies with the medical record as described

22    above, such that this error would be harmless. *See Molina*, 674 F.3d at 1115 (an error is harmless

23    if it is "inconsequential to the ultimate nondisability determination").

## 2. Medical Opinions

The regulations effective March 27, 2017, require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors.[3] 20 C.F.R. § 416.920c(a)–(b). The regulations require an ALJ to specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id*. at § 416.920c(c)(1)–(2).

Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Zhu v. Comm'r of Soc. Sec. Admin.*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (applying the substantial evidence standard under the 2017 regulations). With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

A. <u>Dr. Stacey Rittmueller, D.O.</u>

Dr. Rittmueller identified Plaintiff's diagnoses of Factor V Leiden, chronic venous insufficiency, history of deep vein thrombosis, history of renal cell carcinoma status post nephrectomy, anxiety, and depression. AR 1613. Dr. Rittmueller found that there was "no medical indication during day for dependent edema" regarding whether Plaintiff needed to lie down during the day and that Plaintiff needs to elevate her legs "[a] couple times a day in conjunction with compression stockings." AR 1613. Dr. Rittmueller further noted that certain work "being on her

---

[3] The Ninth Circuit has not yet addressed the 2017 regulations in relation to its standard for the review of medical opinions.

feet entire shift" could "possibly" cause Plaintiff's condition to deteriorate but the doctor noted that she was "otherwise, unable to determine" whether work on a regular and continuous basis would cause Plaintiff's condition to deteriorate. AR 1613. Dr. Rittmueller did not opine regarding specific exertional levels that Plaintiff can perform. AR 1614.

The regulations require the ALJ to articulate the persuasiveness of each medical opinion and explain how the ALJ considered the supportability and consistency factors for that opinion. 20 C.F.R. § 416.920c(a)–(b). The ALJ found Dr. Rittmueller's opinion unpersuasive. AR 28. Specifically, the ALJ found that Dr. Rittmueller's opinion that Plaintiff needs to elevate her legs a couple of times a day lacked specificity and that her opinion was inconsistent with and unsupported by the objective medical evidence. AR 28. The ALJ further found Dr. Rittmueller's opinion that Plaintiff's condition would possibly deteriorate based on being on her feet for an entire shift to be unpersuasive because the opinion was unsupported by objective medical evidence and by Dr. Rittmueller's own statements. AR 28.

Plaintiff argues that the ALJ erred by rejecting Dr. Rittmueller's opinion regarding Plaintiff's need to elevate her legs due to lack of specificity. Dkt. 12, at 15. The ALJ found that "Dr. Rittmueller failed to provide any indication as to how long the elevation needs to be perform or how high the elevation needs to be," and that the doctor's opinion "does not state or imply that the claimant would be unable to do her twice-daily leg elevations before and/or after a standard eight-hour work shift or during standard work breaks." AR 28–29. An ALJ is not required to provide clear and convincing reasons to reject a physician's statement when the statement did not assess specific limitations in relation to an ability to work. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010); *see also Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and

inadequately supported by clinical findings."). Here, although Dr. Rittmueller noted that Plaintiff needed to elevate her legs a couple of times per day, the doctor did not explain how this action translated into a specific functional deficit that precluded work activity or otherwise limited Plaintiff on a sustained basis—indeed, the doctor did not assess any exertional limitations considering Plaintiff's condition. AR 1613–14; *see Morgan*, 169 F.3d at 601 (finding substantial evidence supported ALJ's determination that physician's reports did not show how a claimant's "symptoms translate into specific functional deficits which preclude work activity"). The ALJ, therefore, reasonably found Dr. Rittmueller's opinion unpersuasive for failing to identify specific functional imitations related to her ability to work. Further, contrary to Plaintiff's contention, the ALJ did not find the evidence from Dr. Rittmueller ambiguous or the record inadequate to allow for proper evaluation of the evidence, implicating a need to further develop the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered") (internal quotation marks and quoted sources omitted); *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Plaintiff next argues that the ALJ erred by rejecting Dr. Rittmueller's opinion that Plaintiff would be unable to be on her feet for an entire shift. Dkt. 12, at 15. The ALJ found that Dr. Rittmueller's opinion was unsupported by the medical evidence of record. AR 29. Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Here, the ALJ found that Dr. Rittmueller's opinion was inconsistent with her own statement that the doctor was

unable to determine if Plaintiff has any conditions that are likely to cause pain. AR 29. The ALJ further found that the doctor failed to support the limitation with adequate explanation or by citing to objective medical evidence. AR 29. An ALJ may reject physician reports that do not contain any explanation for the bases for their conclusions. *See Molina*, 674 F.3d at 1111. Therefore, Plaintiff has not shown that the ALJ erred in considering Dr. Rittmueller's opinion, and the ALJ's conclusions were supported by substantial evidence.

Even if the ALJ erred in evaluating Dr. Rittmueller's opinion, this error would be harmless because the step five findings adequately considered the sitting and standing limitations assessed by Dr. Rittmueller. At the hearing, the VE testified that the jobs of collator operator and photocopy operator can change positions between sitting and standing about every half hour. AR 138. Therefore, even if the ALJ erred by not limiting Plaintiff from being on her feet for an entire shift, this error would be harmless because at least two of the jobs found at step five permitted changing between sitting and standing about every half hour. *Molina*, 674 F.3d at 1115 (an error is harmless if it is "inconsequential to the ultimate nondisability determination").

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 19th day of November, 2021.

MARY ALICE THEILER
United States Magistrate Judge

ORDER
PAGE - 16